**UNITED STATES COURT OF APPEALS**

**Filed 7/29/96**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

A. LEONARD VARAH,

    Defendant-Appellant.

No. 96-8007
(D.C. No. 94-CV-124-J)
(D. Wyoming)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRORBY, EBEL** and **HENRY**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

ordered submitted without oral argument.

A. Leonard Varah, appearing pro se and *in forma pauperis*, appeals the district court's denial of his motion to vacate, set aside or correct his sentence brought under 28 U.S.C. § 2255. In August of 1987, a jury found Mr. Varah guilty of conspiracy in violation of 18 U.S.C. § 371, mail fraud in violation of 18 U.S.C. § 1341 and securities fraud in violation of 15 U.S.C. §§ 77q and 77x. Mr. Varah has previously appeared before this court in connection with this case in two direct appeals, *United States v. Varah*, 952 F.2d 1181 (10th Cir. 1991); *United States v. Varah*, No. 87-2320, 1992 WL 186530 (10th Cir. July 30, 1992), *cert. denied*, 506 U.S. 1079 (1993), and regarding a Writ of Mandamus. *Varah v. Honorable Alan B. Johnson, United States District Judge for the District of Wyoming,* No. 95-625, slip op. (10th Cir. Sept. 26, 1995).

Mr. Varah raised eleven issues in his § 2255 petition. Without holding an evidentiary hearing, the district court entered a decision and memorandum denying Mr. Varah's petition. On appeal, Mr. Varah contends the district court erred in denying his § 2255 petition without holding an evidentiary hearing.[1] We

_____

[1] Because we reject Mr. Varah's claims on the merits and because neither party raised the issue, we decline to address any effect the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, may

affirm the district court's decision.


I

Under 28 U.S.C. § 2255:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.


On appeal, "we must first decide whether 'petitioner's allegations, if proved, would entitle him to relief. If so, the district court's summary denial of an evidentiary hearing is reviewed for an abuse of discretion.'" *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991) (internal citation omitted). Under the abuse of discretion standard we will not disturb the district court's decision unless we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991). We also note we are free to affirm the district court's decision on any grounds supported by the record, "even grounds not relied upon by the district court." *United States*

---

have on our review of § 2255 petitions. *See Lennox v. Evans*, No. 96-6041 at 8 (10th Cir. June 24, 1996) (also declining to address the Act's effect on § 2255 petitions).

*v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994). On appeal Mr. Varah claims the district court erred by denying him a hearing regarding seven issues. We will address each one in turn.

A.     Right to a Speedy Appeal

Mr. Varah asserts he deserved an evidentiary hearing on his claim the delay in his direct appeal denied him his constitutional right to a speedy trial. We agree with Mr. Varah that the nearly five years occurring between his sentencing on August 21, 1987, and July 30, 1992, when his appeal was decided is a long time to wait for a ruling. In order to successfully make his claim, however, he must prove the factors outlined in *Harris v. Champion*, 15 F.3d 1538 (10th Cir. 1994). In *Harris* we recognized the meaninglessness of an appeal that is inordinately delayed. *Id.* at 1557-58. To determine whether the delay violated Mr. Varah's due process rights we must balance four factors:

    a. the length of the delay;

    b. the reason for the delay;

    c. whether the petitioner asserted his right to a timely appeal; and

    d. whether the delay prejudiced the petitioner by

        i. causing the petitioner to suffer oppressive incarceration pending appeal; or

        ii. causing the petitioner to suffer constitutionally cognizable

anxiety and concern awaiting the outcome of his or her appeal; or

iii. impairing the petitioner's grounds for appeal or his or her defenses in the event of a reversal and retrial.

*Id.* at 1559. We will address each factor. The nearly five years Mr. Varah waited for his appeal to be resolved clearly qualifies as an inordinate delay capable of triggering due process concerns. Because we are not provided with the reason for the delay[2] we will assume there is not a constitutionally sufficient justification for the delay. Regarding the third factor, we fail to see any evidence that Mr. Varah contested the delay during his motions; however, because every appellant has the right to believe his or her appeal will be dealt with in a reasonable time and recognizing that Mr. Varah is appearing pro se, we will not weigh this failure too heavily against him.

Finally, we must decide whether or not the delay prejudiced Mr. Varah. Mr Varah claims the delay caused "the deterioration of his mental illness," had a "substantial financial effect ... because of his inability to obtain meaningful employment during this period," affected his personal life and family and affected his ability to pursue his § 2255 motion. The district court found:

---

[2] Although from the record it appears to have been caused primarily by the district court's handling of post-trial motions.

Although defendant Varah was not incarcerated during the post-trial proceedings, he contends that he suffered anxiety and distress by virtue of the delay. The Government has noted that, in a sworn statement of the defendant dated September 8, 1992, and submitted to the court in response to the Government's motion to revoke defendant's bond, Varah indicated he was employed by a private individual for several years as a consultant and as a part-time official. There is no doubt that conviction for criminal conduct itself carries a significant stigma, which impacts a defendant's personal and business life. Here, however, the effect upon the defendant has not been shown to be inordinate or unusual beyond that experienced by others awaiting the outcome of their appeals.

Because he was not incarcerated during the appeal and he has not claimed an impairment to his grounds of appeal, Mr. Varah must show a constitutionally cognizable anxiety to prevail. In *Harris* we held:

A petitioner has no reason to be anxious or concerned about the time it takes to adjudicate an appeal that is without merit. Therefore, to establish prejudice resulting from anxiety, a petitioner must ... assert a colorable state or federal claim that would warrant reversal of the petitioner's conviction or reduction of sentence to an amount of time less than that taken to adjudicate the appeal.

*Id.* at 1565. Because Mr. Varah was ultimately unsuccessful in his appeal he had no reason to be concerned or anxious about the delay and he is therefore unable to meet the prejudice factor. Thus, the district court did not abuse its discretion in denying his right to a speedy appeal claim without a hearing.

B.     Denial of Effective Assistance of Counsel

In his complaint pursuant to § 2255, Mr. Varah  raised an ineffectiveness of

counsel claim which the district court denied. Mr. Varah also raised ineffectiveness of counsel on his direct appeal, which we denied, holding "Varah has failed to show that 'there is a reasonable probability that, but for counsel's ... errors, the result of the proceeding would have been different,' as required by *Strickland* [*v. Washington*, 466 U.S. 668, 694 (1984)]." *United States v. Varah*, No. 86-00063-01J, 1992 WL 186530, at *4 (10th Cir. July 30, 1992), *cert. denied*, 506 U.S. 1079 (1993). In *United States v. Galloway*, 56 F.3d 1239, 1242-43 (10th Cir. 1995), we held:

> the fact that an ineffectiveness claim is raised and adjudicated on direct appeal will not procedurally bar an ineffectiveness claim in a proceeding under 28 U.S.C. § 2255, where new reasons are advanced in support of that claim. It should go without saying that the identical reasons in support of ineffectiveness cannot be litigated twice. That is prevented by the doctrine of issue preclusion.

Mr. Varah claims issue preclusion does not bar his current ineffective assistance of counsel claim because "[t]he claim presented in this petition is different because it is now supported by the affidavit of Varah's trial counsel, where his claim in the direct appeal was not."

We have carefully reviewed Mr. Varah's claims in his direct appeal and the affidavit written by his trial attorney, Daniel White. This affidavit contains 50 enumerated paragraphs in which Mr. White lists his lack of preparation, failure to interview the government's proposed witnesses prior to trial, failure to

comprehend the evidence against Mr. Varah so he could prepare an adequate defense, his failure to hire an accountant, errors he made during cross examination and his poor handling regarding whether Mr. Varah should testify on his own behalf. These are the exact same failings Mr. Varah alleged in his direct appeal. The only difference is in the direct appeal his counsel provided record citations as evidence whereas Mr. Varah's § 2255 motion is supported by Mr. White's affidavit. Mr. White's affidavit simply admits the accusations made by appellate counsel on direct appeal. As previously stated, we have already found those claims lacking merit in Mr. Varah's direct appeal. Because we find no relevant distinction between the issues raised or the reasons given in the two proceedings, we hold Mr. Varah's ineffective assistance of counsel claim is barred by the doctrine of issue preclusion and was properly denied without a hearing.

C.     Attorney Pico's Alleged Threats Against Trial Counsel

Mr. Varah next alleges he deserved a hearing regarding the threats United States Attorney Francis Pico allegedly made against Mr. White regarding the above referenced affidavit. Mr. Varah claims these threats were made to deprive him of Mr. White's testimony:

> This included withdrawal of his affidavit prepared to support Varah's claim of ineffective assistance of counsel.... Attorney Pico's actions also deprived Varah of Attorney White's testimony in regards to the anti-semitic remarks made to him by Attorney Pico. Finally, these

-8-

threats prevents [sic] Varah from using Attorney White's testimony to support his claim that exculpatory evidence was withheld by the Government.

Mr. Varah alleges "these threats were that these Government employees would use their influence to cause Attorney White financial and professional harm if he did not withdraw the affidavit ... in support of his claim for ineffective assistance of counsel." The district court denied this claim noting that the only evidence Mr. Varah offered to support his claim was a letter from Mr. White declining Mr. Varah's request for an additional affidavit in which Mr. White specifically states that the letter should not be used as an evidentiary basis for any relief Mr. Varah sought in federal court. In the letter Mr. White does not claim that any threats have been made against him. The district court found:

> The additional affidavit defendant sought from his trial counsel relates to communications made after trial and after the original affidavit was delivered to the defendant. This ground for the motion under 28 U.S.C. § 2255, even if true, would not justify vacating, setting aside, or correcting the sentence imposed by the court. No showing has been made that the conduct of government officials was in fact improper and if it was, whether it infected the trial in such a manner as to warrant reversal or whether it was harmless beyond a reasonable doubt.

The only threat Mr. Varah identifies focuses on Mr. White withdrawing his affidavit written in support of Mr. Varah's ineffective assistance of counsel claim. This affidavit, however, was not withdrawn and was considered as evidence by both the district court and this court. Mr. Varah has thus suffered no prejudice

-9-

even if he were able to prove such a threat had been made. His expansion of this one alleged threat into a whole new realm of prejudice is unsupported by any evidence or facts other than his conclusory allegations nor has he tied it to any grounds warranting vacating, setting aside or correcting his sentence. For these reasons we find the district court did not abuse its discretion in denying him a hearing on this issue.

D.    Effect of Mr. Varah's Mental Illness

Mr. Varah alleges his mental illness prevented him from assisting in his defense during the trial. The government notes that Mr. Varah failed to allege this claim in his direct appeal, which procedurally bars it from being raised for the first time in a § 2255 motion unless "he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993). Mr. Varah fails to allege any reason why he failed to bring this claim during his direct appeal. Even if his claim was not procedurally barred, however, it would fail. The only evidence Mr. Varah offers in support of his claim is his diagnosis shortly after the trial with severe depression and a letter from the Department of Corrections stating that since his incarceration he has been

prescribed Prozac and required to see a psychiatrist once a month. These are all events occurring after the trial. Furthermore, the district court in its opinion found:

> The court did not observe difficulty on the part of the defendant in relating to his counsel during the course of the trial. The defendant attended robing room motions and proceedings outside of the presence of the jury when the defendant was subject to closer observation by the court. Neither the court's observation of the defendant during the course of the four-week trial nor the record in this matter support defendant's claim.

Giving the district court's personal observations deference and considering the absence of any evidence beyond Mr. Varah's conclusory allegations, we find the district court did not abuse its discretion in denying his motion without a hearing on this matter.

E.    Allegations of Religious Prejudice

Mr. Varah alleges Mr. Pico made anti-Semitic remarks which "raise a strong presumption that his motives in taking certain actions in this case are based on his prejudice against Varah because of his religion." In particular Mr. Varah claims Mr. Pico's interference with Mr. Varah's request to be transferred to Canada, his native country, pursuant to 18 U.S.C. § 4100 *et seq.*, was motivated by anti-Semitism. Mr. Varah provides no factual basis for this claim nor any information regarding how or when Mr. Pico interfered with his transfer request.

We agree with the government's position that because § 2255 motions are brought to vacate, set aside or correct illegal or unconstitutional convictions or sentences it is not the appropriate medium to deal with denial of transfer request motions. The district court correctly denied this claim without holding a hearing.

F.      Government's Alleged Failure to Disclose Exculpatory Evidence

Mr. Varah maintains the government failed to disclose exculpatory evidence including "specific actions by other Government agencies which may be inconsistent with his conviction, ... specific witnesses interviewed by the Government before his trial who subsequently gave exculpatory testimony in other proceedings, and Government witnesses who gave different testimony at subsequent proceedings than the testimony given at Varah's trial."  The district court denied these allegations, stating:

> Defense counsel was provided access to all evidence in possession of the prosecution as reflected in the Proffer of evidence submitted two months before trial and in the six notices filed by the Government before trial which described its intention to use certain evidence.  In addition, evidence in possession of the Government was available in the months preceding trial for examination by the defendant and his counsel....
>
> There is no evidence that the United States was aware of perjured or contradictory testimony, if any, allegedly given by Government witnesses or of potential witnesses that was generated after defendant's trial.  There is no basis for defendant's contention that the United States concealed evidence from him or otherwise sought to undermine his defense.

After reviewing the record we find no evidence of prosecutorial misconduct. The record reveals the information known by the government before and during trial was made freely available to Mr. Varah and his attorney. The fact they may have failed to review it thoroughly cannot be blamed on the government. Furthermore, Mr. Varah provides no evidence that the government knew of any allegedly contradictory testimony before or during trial. Once again, Mr. Varah makes several conclusory allegations. To support his allegations Mr. Varah points to the fact that two government agencies, the Security and Exchange Commission and the Internal Revenue Service, made subsequent findings of lesser liability against Mr. Varah "based upon the same documents in the possession of Attorney Pico and the U.S. Attorney's office for the District of Wyoming." This claim merely asserts that different parts of the government concerned with different types of liability relied on the same documents to find different levels of culpability. It does not support a claim that the government somehow concealed evidence from Mr. Varah. The district court did not abuse its discretion in denying Mr. Varah's claim for a hearing on this issue.

G.     Mr. Pico's Failure to Deny or Contradict Mr. Varah's Allegations

Mr. Varah's final contention is a broad generalization that because Mr. Pico

has not contradicted or denied the accusations of misconduct or anti-Semitic remarks or motivations made against him an evidentiary hearing must be held on Mr. Varah's motion. This contention merely attempts to revive arguments we have already addressed above and is without merit.[3]

The district court's order is **AFFIRMED**.

Entered for the Court:

**WADE BRORBY**
United States Circuit Judge

---

[3] We note for the record that in its brief the government states that it does not concede that any threats were made against Mr. White and "vehemently and without qualification" denies that any racially motivated actions were taken by its attorneys.